# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Brian Austin Katonak, Respondent

Appellate Case No. 2021-001073

---

Opinion No. 28075
Submitted November 19, 2021 – Filed December 15, 2021

---

## DEFINITE SUSPENSION

---

Disciplinary Counsel John S. Nichols and Senior
Assistant Disciplinary Counsel Ericka M. Williams, both
of Columbia, for the Office of Disciplinary Counsel.

William O. Higgins, of Columbia, for Respondent.

---

**PER CURIAM:**   In this attorney disciplinary matter, Respondent and the Office
of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by
Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary
Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court
Rules (SCACR).  In the Agreement, Respondent admits misconduct and consents
to the imposition of a public reprimand or a definite suspension not to exceed one
year.  We accept the Agreement and suspend Respondent from the practice of law
in this state for one year.

## I.

Respondent was admitted to practice in South Carolina in 1992.  Since 2000, he
has operated a solo practice in Anderson County handling a variety of matters,
including real estate, family, and criminal matters.  This Agreement relates to eight
disciplinary complaints filed against Respondent between 2014 and 2020, each of
which are detailed below.

**Matter A**

Respondent represented Client A at a four-day bench trial on criminal charges in September 2013. Client A was found guilty and sentenced on September 12, 2013. That same day, Respondent filed and served a Notice of Appeal on behalf of Client A.

On November 19, 2013, the South Carolina Commission on Indigent Defense (SCCID) sent Respondent a letter indicating SCCID would take over representation of Client A if Respondent furnished various documents, including an affidavit of indigency completed by Client A. Respondent forwarded the affidavit of indigency to Client A, indicating he would file the completed affidavit upon receipt.

On March 11, 2014, Respondent wrote to Client A and indicated that he spoke with an individual at SCCID who informed Respondent that Client A's case was assigned to someone in the SCCID office and that the transcript was in the process of being ordered. Respondent represents that based on his conversations with SCCID, he believed he was no longer involved in the appeal.

On April 10, 2014, the South Carolina Court of Appeals dismissed Client A's appeal citing counsel's failure to order the transcript. The case was remitted to the trial court on April 28, 2014. On May 16, 2014, Respondent filed a motion to reopen Client A's case, which was returned without filing due to the court of appeals' lack of appellate jurisdiction.[1]

Respondent believed SCCID had assumed representation of Client A's appeal, but Respondent acknowledges that he was never provided anything in writing indicating that SCCID had assumed actual representation or that Respondent was no longer counsel of record. Respondent admits his conduct in this matter violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3

---

[1] Following the court of appeals' dismissal of the direct appeal, a PCR court ultimately granted Client A leave to file a belated appeal pursuant to *White v. State*, 263 S.C. 110, 208 S.E.2d 35 (1974). In August 2020, the court of appeals affirmed the case on the merits. *In re Whaley*, Op. No. 2020-UP-232 (S.C. Ct. App. filed Aug. 12, 2020).

(requiring diligence); and Rule 1.16(d) (requiring that upon termination of representation, a lawyer must take reasonable steps to protect client interests).

## Matter B

Complainant B is a chiropractor who, on June 18, 2010, entered into an agreement with a patient to allow for the patient's attorney to release payment for services to Complainant B. The patient retained Respondent to represent him regarding his personal injury case, and on January 5, 2011, Respondent issued a letter of protection to Complainant B agreeing to protect Complainant B's fees at the time of settlement of the case.

The case eventually settled for $10,000, and a stipulation of dismissal was filed in the case on September 26, 2014. The amount due to Complainant B at the time of settlement was $3,474.

On October 13, 2014, Respondent mailed a letter to Complainant B providing details of the settlement and explaining "I [] neglected that I had sent a letter to your office to protect your bill." In the letter, Respondent also advised Complainant B that the patient/client did not authorize Respondent to pay any medical providers from settlement proceeds. However, Respondent indicated he wanted to "work something out on the matter" and proposed payment of $1,175 of the attorney's fees he received on the case. Respondent further stated he would immediately forward payment if the proposed arrangement was acceptable to Complainant B.

Two days later, on October 15, 2014, Complainant B's office faxed a letter to Respondent advising that Complainant B was willing to accept the offer of $1,175 in satisfaction of the obligation to protect Complainant B's fees. Respondent neither confirmed the arrangement nor forwarded payment of the $1,175 in satisfaction of the arrangement. Respondent admits his conduct in this matter violated Rule 1.15(d), RPC, Rule 407, SCACR (requiring prompt delivery of funds or property to a client or third party).

## Matter C

Respondent was hired to render a title opinion regarding a bank loan to a borrower. On February 17, 2011 Respondent issued a preliminary title opinion letter to SB&T bank disclosing one open mortgage to First Union Bank. On July 12, 2011, Respondent issued a final title opinion to SB&T Bank stating that the prior debt to

First Union Bank had been paid and the mortgage to SB&T Bank was the only mortgage or lien on the subject property. The loan was subsequently assigned to Georgia Bank & Trust.

The borrower thereafter defaulted on his payments, and during the foreclosure process, a title abstract revealed three prior mortgages to Regions Bank which had not been canceled. These mortgages were not disclosed in Respondent's title opinion letters to SB&T Bank. Respondent failed to respond to numerous communications from Georgia Bank & Trust's attorney requesting that Respondent take action to satisfy and cancel the prior mortgages.

On August 17, 2015, Georgia Bank & Trust filed a legal malpractice action against Respondent citing his failure to properly conduct a thorough title search prior to issuing the preliminary and final title opinions. Respondent's malpractice carrier subsequently settled the case, and the parties filed a Stipulation of Dismissal on April 27, 2016. Respondent admits his conduct in this matter violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (requiring competence); Rule 1.3 (requiring diligence); and Rule 1.4 (requiring adequate communication).

## Matter D

ODC received a complaint and ultimately determined there was no clear and convincing evidence of misconduct. However, Respondent failed to timely respond to the August 10, 2016 notice of investigation or the subsequent letter pursuant to *In re Treacy*, 277 S.C. 514, 290 S.E.2d 240 (1982). Respondent admits his conduct in this matter violated Rule 8.1(b), RPC, Rule 407, SCACR (requiring a lawyer to respond to a lawful demand for information from ODC).

## Matter E

Husband and Wife purchased a mobile home and land in 2003, and Respondent served as the closing attorney for the transaction. In 2009, the couple discovered they had title to the land but not to the mobile home. Husband and Wife contacted Respondent regarding the title to the mobile home, but Respondent never provided the title information to them. The couple thereafter attempted to resolve the issue on their own but subsequently discovered the mobile home title remained listed in the name of the previous owners who were now divorced. Husband and Wife were not able to resolve the title issue in 2009.

In 2016, Husband and Wife contacted Respondent again regarding the title issue, as they were in the process of selling the mobile home. Respondent informed the couple that he had found the title to the mobile home. The couple hired another firm to assist them with the title issue, and Respondent's firm delivered the mobile home title to that firm. Respondent admits his conduct in this matter violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (requiring competence); Rule 1.3 (requiring diligence); and Rule 1.4 (requiring adequate communication).

## Matter F

This matter involved two separate issues concerning a deed and Respondent's efforts to form a corporation on behalf of Client F. Based on the facts recited in the Agreement and supplemental letter provided by the parties, we find Respondent's conduct in this matter did not constitute misconduct.

## Matter G

Respondent was retained in August 2015 to represent Client G in a domestic action. At times during the representation, Respondent failed to adequately communicate with Client G or timely respond to Client G's request for information about the status of her case. Respondent failed to timely respond to the July 6, 2018 notice of investigation.[2] Respondent admits his conduct in this matter violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.4 (requiring adequate communication); and 8.1(b) (requiring a lawyer to respond to a lawful demand for information from ODC).[3]

## Matter H

Respondent was retained in October 2019 to represent Client H in a domestic action. At times during the representation, Respondent failed to adequately

---

[2] ODC served Respondent with a *Treacy* letter on August 10, 2018. Respondent's response to the notice of investigation was received on August 15, 2018.

[3] Although the Agreement also references a violation of Rule 1.2(a), RPC, in connection with Matter G, we find the facts recited in the Agreement do not provide an adequate basis for this Court to conclude Rule 1.2(a) was violated in that matter.

communicate with Client H or timely respond to her request for information about the status of her case.

Additionally, opposing counsel served Respondent with interrogatories and requests for production requiring his answers or objections, if any, within thirty days.  Respondent forwarded the interrogatories to Client H who provided her responses via email on March 30, 2020.  Respondent failed to timely provide responses to the interrogatories and requests for production to opposing counsel.

On March 31, 2020, opposing counsel filed a motion to compel Respondent to respond to the discovery requests.  Based on the Coronavirus pandemic and this Court's related order dated April 3, 2020, the family court issued a memorandum indicating it would not hold a hearing but would review any written arguments from Respondent and opposing counsel.  The family court's memorandum required a response from Respondent to the motion to compel no later than May 15, 2020. Respondent failed to respond to the motion to compel by that deadline.

On June 10, 2020, the family court granted opposing counsel's motion to compel and ordered Respondent to comply within thirty days of filing the order.  The family court ordered Client H to pay $250 as a portion of opposing counsel's legal fees incurred in bringing the motion to compel.  The parties settled the case in mediation in September 2020.  Respondent admits his conduct in this matter violated the following Rules of Professional Conduct, Rule 407, SCACR:  Rule 1.4 (requiring adequate communication); Rule 3.4(c) (prohibiting knowing disobedience of the rules of a tribunal); and Rule 3.4(d) (requiring reasonably diligent efforts to comply with a legally proper discovery request by an opposing party).[4]

## II.

Respondent admits his conduct constitutes grounds for discipline under Rule 7(a)(1), RLDE, Rule 413, SCACR (prohibiting a violation of the Rules of Professional Conduct).  We further note Respondent's disciplinary history includes a 2012 public reprimand citing Rule 1.3 (requiring diligence) and Rule 1.4

---

[4] Although the Agreement also references a violation of Rule 1.2(a), RPC, in connection with Matter H, we find the facts recited in the Agreement do not provide an adequate basis for this Court to conclude Rule 1.2(a) was violated in that matter.

(requiring adequate communication) of the Rules of Professional Conduct, Rule 407, SCACR. *In re Katonak*, 398 S.C. 147, 728 S.E.2d 30 (2012).

In the Agreement, Respondent consents to the imposition of a public reprimand or a definite suspension not to exceed one year and agrees to pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission on Lawyer Conduct (Commission). Respondent also agrees to complete the Legal Ethics and Practice Program Ethics School within one year of this opinion and to retain and work with a law office management advisor for a period of two years following reinstatement.

Respondent also submitted an affidavit in mitigation in which he acknowledges shortcomings in his organizational skills, office management, and case selection practices. Respondent also noted that five of these eight complaints occurred between 2014 and 2016, during which time he experienced substantial personal and family difficulties which drew his focus away from his law practice.

## III.

We hereby accept the Agreement. Although we are sympathetic to Respondent's personal difficulties, in light of the pattern of misconduct involved in these matters, we find a definite suspension is warranted. Accordingly, we suspend Respondent from the practice of law in this state for a period of one year.

Within fifteen days of the date of this opinion, Respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30, RLDE, Rule 413, SCACR. Within thirty days of the date of this opinion, Respondent shall pay or enter into a reasonable plan to repay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission. Respondent shall complete the Legal Ethics and Practice Program Ethics School within one year of the date of this opinion, and he shall retain and work with a law office management advisor for a period of two years following reinstatement.

**DEFINITE SUSPENSION.**

**BEATTY, C.J., KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**